

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed January 26, 2021**

**United States Bankruptcy Judge**

_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| CGE REAL ESTATE HOLDINGS, LLC, | § | CASE NO. 19-40007-MXM-11 |
| | § | |
| DEBTOR. | § | CHAPTER 11 |
| | § | |

| | | |
|---|---|---|
| YYP GROUP, LTD, | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | ADVERSARY NO. 19-4080-MXM |
| | § | |
| CGE REAL ESTATE HOLDINGS, LLC, RUSSELL ALLEN LAIRD, AND AARON CAIN MCKNIGHT | § | |
| | § | |
| DEFENDANTS. | § | |

**FINDINGS OF FACT AND CONCLUSION OF LAW**
*[Relates to Adv. ECF No. 1]*

The Court conducted a trial on the Complaint[1] filed by plaintiff YYP Group, Ltd. (the "*Plaintiff*") against defendant Aaron Cain McKnight ("*McKnight*").[2] By its Complaint, the Plaintiff requests that the Court hold defendant McKnight in civil contempt for violation of the Stay Order[3] entered in the CGE Holdings Bankruptcy Case.[4] The Court has reviewed and considered the pleadings filed in this adversary proceeding and in the CGE Holdings Bankruptcy Case, the testimony of witnesses, the exhibits admitted into evidence, and the arguments of counsel.[5] This ruling constitutes the Court's findings of fact and conclusions of law[6] as required by Federal Rule of Civil Procedure 52, made applicable in this adversary proceeding by Federal Rule of Bankruptcy Procedure 7052.

## I. JURISDICTION AND VENUE

The Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(a) and the standing order of reference in this district. This adversary proceeding involves a core matter over which the Court has both statutory and constitutional

---

[1] *Complaint for Civil Contempt*, Adv. ECF No. 1 (the "*Complaint*").

[2] The Plaintiff filed a *Motion for Entry of Default by Clerk Against Defendants*, Adv. ECF No. 12, and obtained a *Clerk's Entry of Default*, Adv. ECF No. 13, against defendant CGE Holdings, LLC ("*CGE Holdings*") and a Clerk's Entry of Default, Adv. ECF No. 14, against defendant Russell Allen Laird ("*Laird*"). The Plaintiff, however, did not seek a default judgement or prosecute any claims against defendants CGE Holdings or Laird at trial. Therefore, the Plaintiff's claims against defendants CGE Holdings and Laird will be dismissed for want of prosecution.

[3] Pl.'s Ex. 3, *Agreed Order on YYP Group, Ltd.'s Motion for Relief from Stay*, Adv. ECF No. 47-3; Case No. 19-40007, ECF No. 23 (the "*Stay Order*").

[4] Pl.'s Ex.1, *Voluntary Petition for Non-Individuals Filing for Bankruptcy*, Adv. ECF No. 47-1; Case No. 19-40007, ECF No. 1 (the "*CGE Holdings Bankruptcy Case*").

[5] Although McKnight was represented by counsel at the trial, McKnight did not testify or offer any exhibits into evidence to controvert the testimony of the Plaintiff's witnesses or exhibits admitted into evidence.

[6] Any findings of fact that should more appropriately be characterized as a conclusion of law should be regarded as such, and *vice versa*.

authority to enter final orders and judgments pursuant to 28 U.S.C. § 157(b)(2)(A), (G), and (O). Venue for this adversary proceeding is proper pursuant to 28 U.S.C. § 1409(a).

## II. BACKGROUND FACTS

The origin of this dispute involves residential real property located in Dallas, Texas (the "***Property***"). The Property is owned by CGE Holdings.

On July 27, 2018, CGE Holdings executed a Note[7] made payable to the Plaintiff in the original principal amount of $1.4 million. The Note is secured by a Lien[8] on the Property. The Plaintiff is a family limited partnership. The general partner of the Plaintiff is a corporation, of which Mr. George Kimeldorf is President.

To further secure repayment of the Note, McKnight signed a Guaranty,[9] which states that he "is the owner of a direct or indirect interest in [CGE Holdings], and [McKnight] will directly benefit from [Plaintiff's] making the Loan to [CGE Holdings]."[10]

On July 27, 2018, McKnight and CGE Holdings entered into a Joint Venture Agreement.[11] The Joint Venture Agreement provided, in relevant part, that "[t]he Venture shall be limited to the business of financing the purchase of [the Property]."[12] The Joint Venture Agreement provided further that McKnight and his family could "stay in the house" but "[a]t no time shall McKnight

---

[7] *See Real Estate Lien Note*, Case No. 20-40007, ECF No. 10, at 7/19 (the "***Note***"); s*ee also* Kimeldorf Test. at 10:11:34.

[8] *Deed of Trust*, Case No. 20-40007, ECF No. 10, at 10/19 (the "***Lien***"); *see also* Kimeldorf Test. at 10:11:44.

[9] Pl.'s Ex. 8, *Guaranty*, Adv. ECF No. 47-8 (the "***Guaranty***").

[10] *Id.*

[11] Pl.'s Ex. 15, *Joint Venture Agreement for McKnight-Laird Joint Venture 978A*, Adv. ECF No. 47-15 (the "***Joint Venture Agreement***").

[12] *Id.* ¶ 2.

3

pay any rent to [CGE Holdings]."[13] McKnight has lived on the Property since July 2018,[14] and, as of the trial date, McKnight continues to occupy the Property.[15]

CGE Holdings defaulted on the Note by failing to make the first payment due on the Note.[16] The Plaintiff accelerated the Note on September 13, 2018[17] and posted the Property for a foreclosure sale scheduled on January 2, 2019.[18]

On January 1, 2019, CGE Holdings filed its CGE Holdings Bankruptcy Case.[19] McKnight paid CGE Holdings's lawyer to file the CGE Holdings Bankruptcy Case,[20] and he admitted that his "role" in the CGE Holdings Bankruptcy Case was "advising Russell[21] on what to do."[22] The Joint Venture Agreement was not disclosed in CGE Holdings's Schedules or Statement of Financial Affairs[23] or in any other pleading or disclosure filed in the CGE Holdings Bankruptcy Case. Further, even though McKnight had guaranteed CGE Holdings's Note to the Plaintiff, McKnight was not listed as a creditor in the CGE Holdings Bankruptcy Case.[24]

---

[13] *Id.* ¶ 6.

[14] Pl.'s Ex. 17, Adv. ECF No. 48-1, at 4.

[15] *See* Kimeldorf Test. at 10:22:26; 10:29:14.

[16] Pl.'s Ex. 17, Adv. ECF No. 48-1, at 3.

[17] *Id.*

[18] *Id.*; *see also* Kimeldorf Test. at 10:12:55.

[19] Pl.'s Ex. 1, *Voluntary Petition for Non-Individuals Filing for Bankruptcy*, Adv. ECF No. 47-1; Case No. 20-40007, ECF No. 1.

[20] *Oral Deposition of Aaron Cain McKnight (Feb. 26, 2020)*, Pl.'s Ex. 9, Adv. ECF No. 47-9 ("**McKnight Dep.**"), at 11, lines 8–9.

[21] "Russell" is defendant Laird, the Managing Member of CGE Holdings. *See* Pl.'s Ex. 1, Adv. ECF No. 47-1, at 4.

[22] McKnight Dep. 10:14.

[23] Pl.'s Ex. 1, Adv. ECF No. 47-1.

[24] *Id*.

On January 23, 2019, the Plaintiff filed a motion to lift the § 362 automatic stay in the CGE Holdings Bankruptcy Case to permit the Plaintiff to pursue its rights and remedies under the Note and Lien.[25] Prior to the hearing on the motion to lift the § 362 automatic stay, Mr. Kimeldorf testified that the parties agreed to the terms of the Stay Order, which was intended to provide CGE Holdings and McKnight with approximately two months to sell or refinance the Property and pay off the Note.[26] The Stay Order provided further that if the parties were not successful in paying off the Note by May 6, 2019, the Plaintiff was authorized to proceed with a May 7, 2019 foreclosure sale of the Property and that:

> Debtor agrees not to take any action whatsoever in any court or otherwise to delay, impede, postpone or otherwise interfere with [Plaintiff's] rights under this Order to foreclose on the Property on May 7, 2019. . . . Debtor and/or anyone acting on its behalf or at its direction is specifically prohibited for (sic) seeking injunctive relief in any attempt to delay the May 7, 2019 foreclosure sale.[27]

Mr. Kimeldorf testified further that the Plaintiff would not have agreed to the Stay Order without the condition that CGE Holdings and McKnight were prohibited from seeking injunctive relief in any attempt to delay, impede, postpone, or otherwise interfere with the Plaintiff's rights in the Stay Order and Property.[28] Mr. Kimeldorf's testimony on these points was credible and uncontroverted by other testimony or exhibits admitted into evidence.

Mr. Kimeldorf's testimony is further corroborated by the email sent by CGE Holdings's bankruptcy counsel—whom McKnight admitted paying to represent CGE Holdings in the CGE Holdings Bankruptcy Case—to McKnight that attached a copy of the Stay Order and specifically

---

[25] Case No. 20-40007, ECF No. 10.
[26] *See* Kimeldorf Test. at 10:13:48; *see also* Pl.'s Ex. 3, Adv. ECF No. 47-3, ¶ 3.
[27] Stay Order ¶ 6; *see also* Kimeldorf Test. at 10:13:58.
[28] *See* Kimeldorf Test. at 10:14:15; 10:19:26.

5

instructed McKnight to "[P]lease read the attached [Stay Order] carefully, it contains important information which ***you*** are responsible, in compliance with the bankruptcy proceedings."[29]

Mr. Kimeldorf testified further that he negotiated directly with McKnight and others by telephone and email from March 2019 through May 6, 2019 regarding the potential sale or refinance of the Property contemplated in the Stay Order.[30] Ultimately, CGE Holdings and McKnight were not successful in paying off the Note by the May 6, 2019 deadline in the Stay Order.[31] Pursuant to the terms of the Stay Order, the Plaintiff posted the Property for a scheduled May 7, 2019 foreclosure sale.[32]

On May 6, 2019, at 11:14 p.m., McKnight filed a State Court Lawsuit[33] seeking an ex parte temporary restraining order and injunction against the Plaintiff and asserting that the Property was his "residence,"[34] that he had an alleged "right of ownership"[35] in the Property, and that he "could elect to sell the property or stay in the house with his family."[36] The State Court entered a temporary restraining order and set the State Court Lawsuit for an evidentiary hearing.[37]

---

[29] Pl.'s Ex. 5, Adv. ECF No. 47-5 (emphasis added).

[30] *See* Kimeldorf Test. at 10:15:00 - 10:17:59; 10:18:47; 10:19:26; s*ee also* Pl.'s Ex. 7, Adv. ECF No. 47-7.

[31] *See* Kimeldorf Test. at 10:14:45; 10.18:47.

[32] Pl's Ex. 6, *Notice of Sale*, Adv. ECF No. 47-6.

[33] Pl.'s Ex. 10, *Plaintiff's Original Petition, Emergency Application for Ex Parte Temporary Restraining Order and Temporary Injunction, Emergency Application, Order Setting Hearing and Request for Disclosure*, Adv. ECF No. 47-10 (the "***State Court Lawsuit***," filed in the County Court al Law No. 2 in Dallas County, Texas (the "***State Court***")). McKnight specifically referenced the Stay Order in his State Court Lawsuit, so there is no dispute he had knowledge of the Stay Order and its terms when he filed the State Court Lawsuit. *See id*. at 4, ¶ 14.

[34] *Id*. at 7, ¶ 27.

[35] *Id*. at 7, ¶ 26.

[36] *Id*. at 3, ¶ 9.

[37] Pl.'s Ex. 17, Adv. ECF 48-1, at 6–7.

Thereafter, on August 30, 2019, the State Court issued a Temporary Injunction[38] further enjoining the Plaintiff from exercising its rights regarding the Property, which was appealed by the Plaintiff.

On November 16, 2020, the Court of Appeals for the Fifth District of Texas at Dallas issued its *Memorandum Opinion* and *Judgment* reversing the State Court and ordering the Temporary Injunction be dissolved and the State Court Lawsuit against the Plaintiff be dismissed.[39]

As addressed in more detail below, the Plaintiff has suffered damages resulting from McKnight's filing and prosecuting of his State Court Lawsuit. Such damages include attorney's fees and costs in an amount of no less than $186,600[40] and a lost opportunity to realize rental income from the Property in an amount of no less than $288,000,[41] for total damages of no less than $474,600.

### III. ANALYSIS

The Plaintiff filed the Complaint asserting that McKnight should be held in civil contempt for violating the Stay Order and that McKnight's willful disregard of the Stay Order warrants sanctions to compensate the Plaintiff for its losses including (i) reimbursement of attorney's fees and costs; and (ii) the Plaintiff's lost opportunity to realize rental income from the Property.

McKnight denies that the Plaintiff is entitled to any relief sought in the Complaint and asserts the following affirmative defenses:

    i.    The Plaintiff's Complaint fails to state a claim upon which relief may be granted;

---

[38] Pl.'s Ex. 11, *Order Granting Temporary Injunction*, Adv. ECF No. 47-11 (the "**Temporary Injunction**").

[39] Pl.'s Ex. 17, Adv. ECF 48-1. The disposition by the Court of Appeals—as counsel for the Plaintiff acknowledged at trial—renders moot the Plaintiff's request in the Complaint for order compelling the Plaintiff to dismiss the State Court Lawsuit with prejudice.

[40] *See* Worsham Test. at 10:39:15; 10:39:53; 10:41:35; *see also* Kimeldorf Test. at 10:26:22; Pl.'s Ex. 16, Adv. ECF No. 47-16.

[41] *See* Kimeldorf Test. at 10:27:00.

  ii.  McKnight did not enter into the Stay Order with the Plaintiff;

  iii.  McKnight did not consent to the Stay Order as required by the Joint Venture Agreement;

  iv.  McKnight is not in privity of the Stay Order; and

  v.  The Plaintiff has not suffered a compensable injury.

**A. The Bankruptcy Court's Authority to Enforce its Own Orders**

A Bankruptcy court may enforce its own orders using § 105[42] of the Code and its inherent civil contempt power.[43]

> [W]hile it is sparingly to be used, yet the power of courts to punish for contempts is a necessary and integral part of the independence of the judiciary, and is absolutely essential to the performance of the duties imposed on them by law. Without it they are mere boards of arbitration, whose judgments and decrees would be only advisory. If a party can make himself a judge of the validity of orders which have been issued, and by his own act of disobedience set them aside, then are the courts impotent, and what the Constitution now fittingly calls the "judicial power of the United States" would be a mere mockery.[44]

Therefore, a party seeking to enforce a court order may bring a complaint or motion for contempt.[45] To establish civil contempt, the plaintiff must show "(1) that a court order was in effect, and (2) that the order required certain conduct by the respondent, and (3) that the respondent

---

[42] "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title . . . ." 11 U.S.C. § 105.

[43] If the purpose of the sanction is to punish the offending party or to vindicate the court's authority, the sanction is viewed as criminal. On the other hand, where the purpose of the sanction is to compensate the aggrieved party for the violation, the sanction is considered civil. Courts are collectively undecided whether bankruptcy courts possess the constitutional authority to impose criminal sanctions, but the bankruptcy court maintains power to conduct civil contempt proceedings arising out of 11 U.S.C. § 105. *Spallone v. United States*, 493 U.S. 265, 276 (1990); *In re Terrebonne Fuel and Lube Inc.*, 108 F.3d 609, 612 (5th Cir. 1997).

[44] *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 450 (1911).

[45] Contempt motions, previously governed by Federal Rule of Bankruptcy Procedure 9020(b), now simply must follow the procedural roadmap typical of all contested matters under Bankruptcy Rule 9014.

failed to comply with the court's order."[46] Actual notice of the order requiring the party to refrain from a particular act is sufficient.[47] Once the moving party makes a prima facie showing that a court order was violated, the burden shifts to the offending party to rebut this evidence, present concrete inability to comply with the order, or otherwise present relevant defenses.[48]

When fashioning an appropriate remedy for contemptuous conduct, a court should consider the broad purpose of civil contempt sanctions, which aims to (1) compensate the plaintiff for losses and expenses incurred due the offending conduct, and (2) coerce compliance with the court order.[49] Sanctions may include damages such as the reimbursement of attorney's fees and costs[50] as well as other types of actual damages suffered by the moving party, such as lost rental income and other forms of opportunity costs.[51]

---

[46] *In re Bradley*, 588 F.3d 254, 264 (5th Cir. 2009) (quoting *Fed. Deposit Ins. Corp. v. LeGrand*, 43 F.3d 163, 170 (5th Cir. 1995)).

[47] Subjective intent to violate an order is not required. Where a party is aware of an order and voluntarily engages in the conduct that violates the order, that party may be held in civil contempt. *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949) ("Since the purpose [of civil contempt] is remedial, it matters not with what intent the defendant did the prohibited act."); *Citizens Bank v. Strumpf*, 37 F.3d 155, 159 (4th Cir. 1994) ("To constitute a willful act, the creditor need not act with specific intent but must only commit an intentional act with knowledge of the automatic stay.")

[48] *In re De La Fuente*, 430 B.R. 764, 785 (Bankr. S.D.Tex. 2010) (citing *F.D.I.C. v. Legrand*, 43 F.3d 163, 170 (5th Cir. 1995)).

[49] *In re Bradley*, 588 F.3d at 263.

[50] Courts have agreed that attorney's fees incurred to rectify contemptuous conduct are a type of injury compensable in a suit for civil contempt. *See, e.g., In re Bradley*, 588 F.3d at 263–64; *Travelhost Inc. v. Blanford*, 68 F.3d 958 (5th Cir. 1995).

[51] *See e.g., American Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574 (5th Cir. 2000) (contempt sanction ordered to compensate American Airlines for lost revenue resulting from defendant's contemptuous conduct in disregard of TRO); *In re FlyGLO, Inc.*, No. 17-11015, 2018 WL 1779327 (Bankr. E.D. La. Apr. 12, 2018) (awarding lost rental income as civil contempt damages where debtor failed to return airplanes in timely manner in accordance with agreed order); *In re Kalpana Electronics, Inc.*, 58 B.R. 326 (Bankr. E.D.N.Y. 1986) (landlord is entitled to recover damages for lost rental income caused by failure to comply with court order).

Here, the Plaintiff requests compensatory, or remedial, civil contempt. Remedial civil contempt is a backward-looking remedy that seeks to mitigate the consequences of the defiant conduct of the opposing party.[52]

**B.      Is McKnight Subject to the Terms of the Stay Order?**

In this case, there is no dispute that the Stay Order was in effect. McKnight argues, however, that he was not subject to the Stay Order and had no duty or obligation to comply with the Stay Order.

The threshold question the Court must answer, therefore, is whether McKnight was subject to the Stay Order and its prohibition against "[CRG Holdings] and/or anyone acting on its behalf or at its direction" from taking "any action whatsoever in any court or otherwise to delay, impede, postpone or otherwise interfere with" the Plaintiff's rights in the Property.[53]

McKnight argues—without the support of any evidence offered at trial—that he is not subject to the prohibition in the Stay Order because he (i) did not enter into the Stay Order; (ii) did not consent to the Stay Order; and (iii) is not in privity of the Stay Order. McKnight further alleges—again without evidentiary support—that all of his actions, including filing and prosecuting the State Court Lawsuit, were taken in his individual capacity and not on behalf of CRG Holdings as required by the Stay Order.

Rather, the credible evidence before the Court includes the following uncontroverted facts:

i.      McKnight's Guaranty states that he "is the owner of a direct or indirect interest in [CGE Holdings];"[54]

---

[52] *In re Bradley*, 588 F.3d at 263.
[53] Stay Order ¶ 6.
[54] Pl.'s Ex. 8, Adv. ECF No. 47–8.

  ii.  McKnight paid CGE Holdings's lawyer to file the CGE Holdings Bankruptcy Case;[55]

  iii.  McKnight participated in the CGE Holdings Bankruptcy Case and admitted that his "role" was "advising Russell on what to do;"[56]

  iv.  CGE Holdings's bankruptcy counsel provided McKnight with a copy of the Stay Order and specifically instructed McKnight that "[P]lease read the attached [Stay Order] carefully, it contains important information which ***you*** are responsible, in compliance with the bankruptcy proceedings;"[57]

  v.  McKnight had actual notice of the Stay Order as evidenced by the email referenced above and by McKnight's admission in his State Court Lawsuit;[58]

  vi.  McKnight contends that the Property is his "residence,"[59] that he had an alleged "right of ownership"[60] in the Property and that he "could elect to sell the property or stay in the house with his family;"[61]

  vii.  McKnight and CGE Holdings were the only parties to the Joint Venture Agreement that was limited exclusively to the Property;[62]

  viii.  McKnight was a party to several email communications with the Plaintiff and others regarding the Property and issues covered by the Stay Order, where McKnight's, Laird's, and CGE Holdings's names were used interchangeably;[63]

  ix.  Mr. Kimeldorf's credible testimony—that the Plaintiff believed the prohibition in the Stay Order was intended to include McKnight—was not controverted by any evidence;

  x.  McKnight willfully filed and prosecuted the State Court Lawsuit in direct violation of the Stay Order; and

  xi.  McKnight's actions were willful and malicious, causing injury to the Plaintiff.

---

[55] McKnight Dep. 11:8–9.

[56] McKnight Dep. 10:14.

[57] Pl.'s Ex. 5, Adv. ECF No. 47-5 (emphasis added).

[58] Pl.'s Ex. 10, Adv. ECF No. 47-10, at 4, ¶ 14.

[59] *Id.* at 7, ¶ 27.

[60] *Id.* at 7, ¶ 26.

[61] *Id.* at 3, ¶ 9.

[62] Pl.'s Ex. 15, Adv. ECF No. 47-15.

[63] Pl.'s Ex. 7, Adv. ECF No. 47-7.

Based on the clear, credible, and uncontroverted evidence before the Court, the Court finds that McKnight (i) actively participated in the CGE Holdings Bankruptcy Case; (ii) actively participated in the negotiations culminating in the agreed Stay Order; (iii) knew he had to comply with the prohibition contained in the Stay Order; and (iv) willfully violated the Stay Order by filing and prosecuting the State Court Lawsuit. Therefore, the Plaintiff has satisfied its burden to establish that (1) the Stay Order was in effect; (2) the Stay Order prohibited McKnight from taking certain actions and conduct regarding the Property; and (3) McKnight willfully and maliciously failed to comply with the Stay Order. McKnight failed to rebut any of the Plaintiff's evidence.

### C. Appropriate Sanctions based on McKnight's Willful Violation of the Stay Order

Because McKnight violated the Stay Order, causing willful and malicious damage to the Plaintiff, the Court must now determine appropriate sanctions, if any, that should be assessed against McKnight.

#### 1. *Attorney's Fees and Costs*

Ms. Worsham testified that the Plaintiff has incurred over $186,600[64] in attorney's fees and costs directly resulting from McKnight's willful violation of the Stay Order. Ms. Worsham's testimony regarding the reasonableness and necessity of such attorney's fees and costs was credible and uncontroverted. In addition, the Plaintiff's Exhibit 16[65] supports and corroborates Ms. Worsham's testimony.

---

[64] *See* Worsham Test. at 10:39:15, 10:39:53, 10:41:35; s*ee also* Kimeldorf Test. at 10:26:22; *see also* Pl.'s Ex. 16, Adv. ECF No. 47-16.

[65] Pl.'s Ex. 16, Adv. ECF No. 47-16.

The Court finds and concludes that an appropriate remedy for McKnight's contemptuous conduct is sanctions against McKnight to reimburse Plaintiff its reasonable and necessary attorney's fees and costs in the amount of $186,600.

### 2. *Plaintiff's lost opportunity to realize rental income from the Property*

Because of McKnight's willful violation of the Stay Order and his continued occupation of the Property—rent free—the Plaintiff has been prevented from obtaining possession of the Property[66] and realizing rental income from May 7, 2019 through the trial date.[67] Mr. Kimeldorf's credible and uncontroverted testimony was that the fair market rental charge for the Property is at least $15,000.00 per month based on comparable rentals for similar properties.[68]

The Court finds and concludes that it should issue an additional sanction against McKnight to reimburse Plaintiff for the rental value of the Property—that McKnight continues to occupy—in the amount of $288,000,[69] representing the fair and reasonable rental rate for the Property from May 7, 2019 through the trial date.

## IV.    CONCLUSION

Based upon all the foregoing reasons, the Court finds and concludes as follows:

1. The Plaintiff has established that (i) the Stay Order was in effect; (ii) the Stay Order required McKnight to comply with the prohibitions contained in the Stay Order; and (iii) McKnight willfully and contemptuously failed to comply with the Stay Order.

2. McKnight failed to offer any evidence to rebut the Plaintiff's credible evidence.

---

[66] *See* Kimeldorf Test. at 10:22:53.

[67] *See* Kimeldorf Test. at 10:23:12.

[68] *See* Kimeldorf Test. at 10:23:21.

[69] *See* Kimeldorf Test. at 10:27:00.

3. The Court overrules each of McKnight's affirmative defenses.

4. An appropriate remedy for McKnight's contemptuous, willful, and malicious conduct is sanctions against McKnight to reimburse Plaintiff (i) its reasonable and necessary attorney's fees and costs in the amount of $186,600, and (ii) the rental value of the Property—that McKnight continues to occupy—in the amount of $288,000, representing the damages suffered by the Plaintiff.

5. The Plaintiff's claims against defendants CGE Holdings and Laird are dismissed for want of prosecution.

The Court will enter a separate Judgment consistent with these Findings of Fact and Conclusions of Law.

### END OF FINDINGS OF FACT AND CONCLUSIONS OF LAW ###